# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| KIMBERLY LYNN JAKUPCZYK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 7:12cv00405 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Kimberly Lynn Jakupczyk ("Jakupczyk") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Specifically, Jakupczyk alleges that the Commissioner erred (1) in failing to assign proper weight to certain medical opinions of record, (2) in finding her anxiety, panic attacks, and depression to be non-severe impairments, (3) in failing to include her mental impairments in the hypothetical questions posed to the vocational expert, (4) in finding her only partially credible in her subjective pain complaints, and (5) in discounting her complaints of shortness of breath.

This court has jurisdiction pursuant to 42 U.S.C. § 1383(c)(3). This case is before me by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The parties have fully briefed all issues and the case is now ripe for decision. I have carefully reviewed the administrative record, the legal memoranda, the argument of counsel, and the applicable law. I conclude that the plaintiff's allegations of error are without merit. As such, I **RECOMMEND DENYING** Jakupczyk's

Motion for Summary Judgment (Dkt. No. 13), and **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. No. 16).

**I.**

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This court limits its review to determining whether substantial evidence exists to support the Commissioner's conclusion that Jakupczyk failed to demonstrate that she was disabled under the Act. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

Jakupczyk bears the burden of proving that she is disabled within the meaning of the Act. English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5)). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects her ability to perform daily activities or certain forms of work. Rather, a claimant must show that her impairments prevent her from engaging in all forms of substantial gainful employment given her age, education, and work experience. See 42 U.S.C. § 423(d)(2).

The Commissioner uses a five-step process to evaluate a disability claim. <u>Walls v. Barnhart</u>, 296 F.3d 287, 290 (4th Cir. 2002). The Commissioner asks, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to her past relevant work; and if not, (5) whether she can perform other work. <u>Johnson v. Barnhart</u>, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); <u>Heckler v. Campbell</u>, 461 U.S. 458, 460-462 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at step five to establish that the claimant maintains the Residual Functioning Capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); <u>Taylor v. Weinberger</u>, 512 F.2d 664, 666 (4th Cir. 1975).

## II.

**<u>Social and Vocational History</u>**

Jakupczyk was born on October 14, 1975, R. 62, and is considered a younger individual under the Act. 20 C.F.R. § 404.1563(c). She has a high school education and two years of community college, without a degree. R. 38–39, 48. Jakupczyk has previously worked as a bartender (light, semiskilled work), cashier (light, unskilled work), general clerk (light, semiskilled work), insulator (medium, semiskilled work), restaurant manager (light, skilled work), office worker (light, unskilled work), and waitress (light, semiskilled work). R. 54, 82–83, 269, 334, 340, 351. Jakupczyk's reported daily activities during the relevant period consisted of reading, watching television, and cooking dinner with her children. R. 189.

**Claim History**

Jakupczyk filed for DIB on October 8, 2008, R. 154, claiming a disability onset date of October 26, 2007. R. 63. Her application was denied initially and upon reconsideration. R. 98, 106. On February 14, 2011, Administrative Law Judge ("ALJ") Joseph T. Scruton held an evidentiary hearing, at which Jakupczyk, represented by counsel, and a vocational expert, testified. R. 18.

On March 14, 2011, the ALJ denied Jakupczyk's claim. R. 15. The ALJ found that Jakupczyk suffers from the following severe impairments: fibromyalgia, myofascial pain syndrome, lumbar spine strain and Tarlov cyst in the upper sacral canal, asthma, and marginally severe depression. R. 20. The ALJ found that all other impairments Jakupczyk suffers are non-severe. R. 21. The ALJ found that none of these impairments, either individually or in combination, meet or medically equaled a listed impairment. R. 21. The ALJ further found that Jakupczyk retained the residual functional capacity ("RFC") to perform a range of sedentary work, with the following limitations: (1) she can lift or carry up to 10 lbs.; (2) she can sit for six to eight hours and stand or walk for two hours in an eight-hour work day; (3) she requires in-place position shifts every hour; (4) she can stand or walk for up to twenty minutes at a time; (5) she can frequently reach, handle, and finger; (6) she can rarely crouch or climb stairs and ramps; (7) she can never climb ladders or scaffolds; (7) she can occasionally stoop and kneel; (8) she should avoid moderate exposure to extreme temperatures, substantial humidity or wetness, and pulmonary irritants; and (9) she can perform the basic mental demands of unskilled work. R. 22. The ALJ found Jakupczyk unable to perform her past relevant work, R. 29, but that jobs exist, in significant numbers in the national economy, such as charge-account clerk, order clerk, and

office addresser, which Jakupczyk can perform given her age, education, work experience, and RFC. R. 30.  As such, the ALJ concluded that Jakupczyk is not disabled. R. 31.

Jakupczyk filed an appeal with the Social Security Administration's Appeals Council. On July 26, 2012 the Appeals Council denied Jakupczyk's request to review the ALJ's decision, thereby rendering the decision of the ALJ the final decision of the Commissioner.  R. 1-5.  On August 28, 2012, Jakupczyk filed her complaint in this court seeking judicial review of the ALJ's decision (Dkt. No. 1).

## III.

Jakupczyk alleges that the Commissioner erred (1) in failing to assigned proper weight to certain medical opinions of record, (2) in finding her anxiety, panic attacks, and depression to be non-severe impairments, (3) in failing to include her mental impairments in the hypothetical questions posed to the vocational expert, (4) in finding her only partially credible in her subjective pain complaints, and (5) in discounting her complaints of shortness of breath.  For the reasons stated herein, I find that these claims are without merit.

**Medical Opinions**

Jakupczyk asserts that the ALJ made two errors in assessing the medical opinions of record.  First, that the ALJ improperly rejected a discrete potion of Dr. Ericka Young's opinion—specifically, that Jakupczyk may need to take multiple breaks to rest her back during the workday.  Second, Jakupczyk claims that the ALJ improperly rejected the opinion of Nurse Practitioner Beth Sutherland that Jakupczyk would sometimes need to take unscheduled breaks of five to ten minutes in duration every thirty minutes to an hour during an eight hour workday.

For the following reasons, I find that the weight assigned to the opinions of Dr. Young and Nurse Sutherland are supported by substantial evidence.[1]

Dr. Young's Opinion

Dr. Young found that Jakupczyk can stand or walk approximately four to five hours in eight hour workday and that she would require no assistive devices. She further found that Jakupczyk can frequently lift 10 lbs. and occasionally lift 20 lbs., would have some trouble bending, stooping, and crouching, would have no manipulative limitations, should not work in extreme cold, and, finally, should not climb. Dr. Young also found that Jakupczyk "may need to take multiple breaks to rest her back." R. 422. The ALJ found that Dr. Young's opinion was relatively well supported by her findings and report, as well as consistent with the objective findings throughout the record. R. 28. As such, the ALJ assigned Dr. Young's opinion "considerable weight," qualified by "a finding that there is no demonstrable need shown for the claimant's rest period or breaks beyond those ordinarily found in regular employment." R. 28.

Jakupczyk asserts that there is no basis for rejecting this portion of Dr. Young's opinion. This is not the case. First, the ALJ noted that, despite Jakupczyk's claims that she becomes tired very easily and is often fatigued, the medical record reveals that she was found to be alert on a regular basis. R. 27. The record supports this finding, as multiple treatment providers found on numerous occasions that Jakupczyk was "alert" or "awake and alert." R. 347-48, 349-350, 352-53, 356-57, 359, 361-62, 363-64, 367-368, 369-70, 459-60, 461-63, 464-65, 556, 545, 554, 557, 558, 559. Furthermore, the ALJ noted that Jakupczyk works part-time as a waitress, walking and standing in three hours shifts. R. 27. Jakupczyk testified that she is extremely tried after working her waitressing shift. R. 43, 48. The ALJ's RFC, however, restricts Jakupczyk to standing or

---

[1] Jakupczyk also argues that the ALJ failed to give any weight to the opinion of Dr. Fahim, a mental health specialist. Dr. Fahim Fahim, however, did not provide any opinion—only his treatment notes are included in the record. This claim is thus without merit.

6

walking for only two hours over the course of an eight-hour work day. This evidence supports the ALJ's conclusion that Jakupczyk will not require an undue number of breaks if employed in limited sedentary work, as such work will be less physically taxing than the waitressing shifts Jakupczyk is currently performing.

Additionally, the state agency physicians, Drs. Richard Surrusco and Michael Hartman found that Jakupczyk is capable of performing a range of light work. R. 71-74, 78, 89-91, 94. The ALJ assigned these opinions only "some weight," findings that Jakupczyk's subjective complaints and treatment records indicate greater limitations. R. 28. The ALJ did not, however, reject these opinions. The ALJ's RFC mostly tracks the opinion of Dr. Young, which was given considerable weight, but as to the single issue of the number breaks Jakupczyk would require, the RFC adopts less restrictive findings more consistent with the State agency opinions. As the fact finder, the ALJ is entitled to weigh the conflicting medical opinions of the record and determine an RFC that was a compromise between them—the ALJ did so here, largely crediting the more restrictive opinion of record, but not entirely rejecting the less restrictive ones. As such, there is substantial evidence supporting the ALJ's decision to discount the portion of Dr. Young's opinion that Jakupczyk "may need to take multiple breaks to rest her back." R. 28, 422.

<u>Nurse Sutherland's Opinion</u>

Nurse Sutherland found that Jakupczyk can sit for less than two hours in an eight hour workday, can stand or walk for less than two hours in an eight hour workday, can frequently lift or carry less than 10 lbs., occasionally lift or carry 10 lbs., and never lift or carry 20-50 lbs. She further found that Jakupczyk can occasionally stoop and crouch, rarely twist or climb stairs, never climb ladders, and has significant limitations with repetitive reaching, handling, and fingering. Finally, Nurse Sutherland found Jakupczyk would sometimes need to take

7

unscheduled breaks of five to ten minutes every thirty minutes to an hour during an eight hour workday, would have "good days" and "bad days," and would be absent from work due to her impairments, on average, more than four days per month. R. 491-92.

The ALJ gave Nurse Sunderland's opinion "very little weight." R. 29. First, the ALJ noted that she is not an acceptable medical source as defined by the Act. R. 29; see 20 CFR §§ 404.1527(c), 416.927(c) (defining acceptable medical sources as licensed physicians, licensed or certified psychologists, and—for limited purposes—licensed optometrists, licensed podiatrists, and qualified speech-language pathologists). The ALJ nonetheless "has a duty to consider all of the evidence available in a claimant's case record, includ[ing] such evidence provided from 'other' nonmedical sources" such as nurse practitioners. Ingle v. Astrue, 1:10CV141, 2011 WL 5328036, at *3 (W.D.N.C. Nov. 7 2011)(citing Social Security Ruling ("SSR") 06–03p;[2] 20 CFR §§ 404.1513(d), 416.913(d)). To determine the appropriate weight given to the opinion of a source who is not "acceptable medical source" as defined by the Act, the ALJ must consider: (1) the length of time the source has known the claimant and the frequency of their contact; (2) the consistency of the source's opinion with the other evidence; (3) the degree to which the source provides supportive evidence; (4) how well the source explains his or her opinion; (5) whether the source has an area of specialty or expertise related to the claimant's impairments; and (6) any other factors tending to support or refute the opinion. Beck v. Astrue, 3:11-CV-00711, 2012 WL 3926018, at *12 (S.D.W. Va. Sept. 7, 2012) (citing SSR 06–03p). The ALJ acknowledged this duty, R. 29 (citing SSR 06-03p), but found that

---

[2] "Social Security Rulings are interpretations by the Social Security Administration of the Social Security Act. While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995) (citing Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989)).

Nurse Sunderland's opinion was without support from her treatment notes or from the substantial evidence of record. R. 29.

The record demonstrates that Nurse Sunderland's treatment notes do not support the extreme limitations she found in her opinion. As the ALJ expressly noted, Nurse Sunderland frequently observed that Jakupczyk's symptoms were improving. R. 29. When Jakupczyk first saw Nurse Sunderland on February 23, 2010, she reported that she was "not really able to tell much difference with [her pain] medication yet," but her pain levels had improved. She also reported sleeping better. R. 559. A month later, Jakupczyk reported that her pain had improved 25% over the prior two months and that her activity level had increased. Nurse Sunderland noted that "Sevella[3] has really made a difference and [Jakupczyk] is doing much better with that," and that she was "doing incredibly well with the Sevella" and "can definitely tell a big difference with it." R. 558. After another month's progress, Nurse Sunderland noted that "Sevella seems to be doing a wonderful job helping [Jakupczyk] control her pain." R. 557. Nurse Sunderland continued to see Jakupczyk on a monthly basis until October, 2010, and Jakupczyk's symptoms continued to improve. Her medication improved her pain and increased her activity levels, R. 545, 554, 556, as well as improving her sleep. R. 543, 556. In August Jakupczyk reported that, "with her pain level being as low as it is, she thinks she can come down on [Lortab] a significant amount if not come off of it completely." R. 543. In October Jakupczyk's pain had not improved since her last visit, but she stated she did not want to take any more narcotics (such as Lortab). R. 542. Additionally, as the ALJ noted, Nurse Sunderland consistently observed Jakupczyk to be in no acute distress. R. 28, 545, 554, 556, 557, 558, 559.

---

[3] Sevella is a brand name for milnacipran.

This inconsistency between Nurse Sunderland's treatment notes and her opinion provides substantial evidence to support the weight the ALJ assigned to the opinion. Furthermore, the ALJ points to the lack of significant diagnostic findings. R. 29. The record contains numerous diagnostic tests with primarily normal results. See, e.g., R. 388 (chest x-ray); R. 296 (chest x-ray); R. 389 (spiral CT exam); R. 390 (chest x-ray); R. 252-54 (cardiac catheterization); R. 391 (chest x-ray); R. 331 (chest x-ray); R. 535 (chest x-ray); R. 488-89 (cervical and lumbar spine x-ray); R. 486 (lumbar spine x-ray); R. 487 (sacrum/coccyx); R. 457-58 (sed rate); R. 482, 511 (chest x-ray); R. 520-21, 552-53 (echocardiogram); R. 480, 508 (chest x-ray); R. 522, 550 (electrocardiogram); R. 546-47 (exercise echocardiogram); R. 494-95, 505-06 (cardiac catheterization). The only significant diagnostic findings came from an MRI of the lumbar spine on August 19, 2009, which revealed a small Tarlov cyst in the upper sacral canal, which the ALJ incorporated in Jakupczyk's severe impairments. R. 20, 477. The MRI was otherwise negative and there was no evidence of any disc herniation. R. 477.[4]

Finally, the ALJ noted that the extreme limitations found by Nurse Sunderland would prevent even the part-time waitressing work performed by Jakupczyk during the relevant period. R. 29. The foregoing evidence demonstrates that the weight given to Nurse Sunderland's opinion is supported by substantial evidence.

**Mental Impairment Severity**

Jakupczyk also argues that the ALJ erred in finding her anxiety and panic attacks to be non-severe. I disagree. First, the ALJ found that Jakupczyk did suffer from marginally severe depression. R. 22, 26. Jakupczyk has failed to explain what functional limitation her anxiety and panic attacks would have imposed in addition to those resulting from her depression. The ALJ

---

[4] An echocardiogram in December of 2003 did reveal evidence of mitral valve prolapse, but there was no evidence of mitral regurgitation and the exam was otherwise within normal limits. R. 530.

has limited Jakupczyk to unskilled work, R. 22, which accounts for her mild to moderate limitations in concentration, persistence, and pace. R. 26.

Additionally, the medical record supports the ALJ's finding that these additional mental impairments were not severe. While Jakupczyk consistently complained to Dr. Carl Hannah about depression, anxiety, panic attacks, and sleep disturbances in 2007 and early 2008, R. 359, 361-612, 363-64, 365-66, 369-70, these symptoms begin improving in June of 2008. R. 356-57. This moderate improvement continued until August of 2008, R. 347-48, 349-350, 352-53, 354-55, but reversed slightly from September to November 2008. R. 337-38, 339-40, 341-42, 344-45. However, in February 2009, Jakupczyk began seeing Dr. Fahim Fahim, a mental health specialist. R. 438-39. By April she was reporting better mood. Dr. Fahim found her symptoms to be in partial remission and did not find it necessary to change her medication. R. 442. Dr. Fahim made the same observations in May 2009, and continued Jakupczyk's medication regimen. R. 441. Jakupczyk did not seek any further mental health treatment and did not complain again of any depression, anxiety, panic attacks, or sleep disturbances. Jakupczyk reported to Nurse Sunderland on August 25, 2010 that she did not "feel like she has any depression or anxiety issues" and that she was sleeping well. R. 543. Finally, Jakupczyk testified before the ALJ that she did not feel depressed and was receiving no mental health treatment beyond medication. R. 44.[5]

---

[5] Jakupczyk also stated that she was seeking counseling and guidance from her church pastor to better help with stressful situations. R. 45. Many of Jakupczyk's complaints of depression and anxiety coincided with situational stressors, such as a divorce and job loss. See, e.g., R. 365-66. It should be noted that feelings of sadness as a result of unfortunate life events are not necessarily indicative of any mental pathology requiring medical intervention. Such a reaction is often to be expected under such circumstances. Beavers v. Astrue, 1:10CV00040, 2011 WL 1638607, at *2. (W.D. Va. May 2, 2011).

For these reasons, I find that substantial evidence supports the ALJ's conclusion that Jakupczyk's depression is a marginally severe impairment and her other mental health problems are non-severe impairments.

**Hypothetical Questions to the Vocational Expert**

Jakupczyk argues that the ALJ's hypothetical to the vocational expert who testified at the hearing was fatally flawed because it did not include any functional limitations as a result of her mental impairments. A vocational expert must base his opinion upon a consideration of all the evidence in the record, and submit the opinion in response to proper hypothetical questions which fairly set out all of a claimant's impairments. See, e.g., Day v. Colvin, 2:12-CV-00014-FDW, 2013 WL 4039422, at *5 (W.D.N.C. Aug. 7, 2013) (citing Walker v. Bowen, 889 F.2d 47, 51 (4th Cir. 1989)). Here, a full reading of the record reveals that the ALJ covered all of Jakupczyk's medically established impairments in his hypothetical questions to the ALJ.

The ALJ found that Jakupczyk's depression was a marginally severe impairment that "would cause mild to moderate limitations in concentration, persistence, and pace." R. 26. While the ALJ did not initially expressly reference unskilled work in his questioning of the vocational expert, the vocational expert nevertheless made clear that the jobs he gave in response to the ALJ's first hypothetical were unskilled. R. 59. The ALJ, vocational expert, and claimant's attorney also had a fulsome discussion about the stress tolerance the jobs proposed by the vocational expert would require, and ultimately established that the jobs given in response to the hypothetical were low stress. R. 56-57. Finally, the ALJ made explicit that he was looking at unskilled jobs in a follow up hypothetical to the vocation expert. R. 59. Thus, the record as a whole makes clear that the ALJ elicited from the vocational expert only jobs which could be performed with Jakupczyk's physical limitations *and* were unskilled and low stress.

An ALJ "has great latitude in posing hypothetical questions" to a vocational expert. Koonce v. Apfel, 166 F.3d 1209, 1999 WL 7864, at *5 (4th Cir. 1999) (unpublished). A hypothetical question which limits a claimant to unskilled work may adequately account for a claimant's mental impairments. See Fisher v. Barnhart, 181 F. App'x 359, 364 (4th Cir. 2006) (citing Howard v. Massanari, 255 F.3d 577, 582 (8th Cir.2001)) (affirming where the ALJ told the vocational expert to assume the claimant capable of only unskilled work and unable to perform complex tasks); see also Bantley v. Chater, 113 F.3d 1231, 1997 WL 232303, at *1 (4th Cir. 1997) (unpublished) (affirming where the ALJ limited a claimant with significant deficiencies of pace, concentration, or persistence to unskilled work of a simple, routine, and repetitive nature); Powell v. Astrue, CIV. SKG 10-02677, 2013 WL 3776948, at *10 (D. Md. July 17, 2013) (collecting cases). By limiting Jakupczyk to unskilled, low-stress work, the ALJ accounted for the mild to moderate limitations in concentration, persistence, and pace resulting from Jakupczyk's marginally severe depression. As such, there was no error in the hypothetical questions posed to the vocational expert.

**Credibility as to Subjective Pain Complaints**

Jakupczyk alleges that the ALJ improperly evaluated her credibility as to her subjective pain complaints. Credibility determinations are emphatically the province of the ALJ, not the court, and courts normally should not interfere with these determinations. See, e.g., Chafin v. Shalala, No. 92-1847, 1993 WL 329980, at *2 (4th Cir. Aug. 31, 1993) (per curiam) (citing Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) and Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964)); Melvin v. Astrue, 6:06 CV 00032, 2007 WL 1960600, at *1 (W.D. Va. July 5, 2007) (citing Hatcher v. Sec'y of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989)). Here, the ALJ's credibility determination is supported by substantial evidence. It should not be

disturbed. See Johnson v. Barnhart, 434 F.3d 650, 658-59 (4th Cir. 2005) (per curiam) (citing Craig, 76 F.3d at 589).

The ALJ found Jakupczyk's allegations of pain to be partially credible. R. 25.[6] First, the ALJ noted that physical examinations reveal generally mild abnormalities. R. 25. The record supports this conclusion. Multiple diagnostic tests throughout the relevant period produced largely normal results. See, e.g., R. 388 (chest x-ray); R. 296 (chest x-ray); R. 389 (spiral CT exam); R. 390 (chest x-ray); R. 252-54 (cardiac catheterization); R. 391 (chest x-ray); R. 331 (chest x-ray); R. 535 (chest x-ray); R. 488-89 (cervical and lumbar spine x-ray); R. 486 (lumbar spine x-ray); R. 487 (sacrum/coccyx); R. 457-58 (sed rate); R. 482, 511 (chest x-ray); R. 520-21, 552-53 (echocardiogram); R. 480, 508 (chest x-ray); R. 522, 550 (electrocardiogram); R. 546-47 (exercise echocardiogram); R. 494-95, 505-06 (cardiac catheterization). The only significant diagnostic findings came from an MRI of the lumbar spine on August 19, 2009, which revealed a small Tarlov cyst in the upper sacral canal, which the ALJ incorporated in Jakupczyk's severe impairments. R. 20, 477. The MRI was otherwise negative and there was no evidence of any disc herniation. R. 477.[7]

The ALJ further noted that Jakupczyk has generally been afforded conservative care and appropriate medication. R. 27. Jakupczyk initially treated with Dr. Carl Hannah for her pain complaints, receiving prescription medication such as Lortab; she saw him regularly from November, 2007 until November, 2008. R. 337-38, 339-40, 341-42, 344-45, 347-48, 349-350,

---

[6] It must also be noted that many of Jakupczyk's pain complaints relate not to any chronic pain issues, but to a progression of various injuries. See, e.g., R. 271-74 (a contusion on her back); R. 291-95 (muscle strain); R. 363-64, 365-66 (shoulder/arm sprain); R. 361-62 (knee sprain after a fall); R. 275-79, 280-82 (back pain after a fall); R. 354-55 (low back pain after falling backwards); R. 247, 303-07, 308-09, 341-42 (right ankle pain from fracture after fall); R. 310-13 (eye injury); R. 245, 320 (pain in right foot after she removed her own cast); R. 472-73, 536 (back pain from fall); R. 483, 513-517 (appendicitis); R. 474-75, 481 (right ankle pain from small fracture after tripping over a dog); R. 497-502 (cutting off the tip of her finger); 503-04 (headache).

[7] An echocardiogram in December of 2003 did reveal evidence of mitral valve prolapse, but there was no evidence of mitral regurgitation and the exam was otherwise within normal limits. R. 530. Subsequent cardiac testing was normal.

352-53, 354-55, 356-57, 359, 361-62, 363-64, 365-66, 369-70.[8]  In February of 2009 Dr. Hannah referred Jakupczyk to a pain management expert, Dr. Cyrus Bakhit.  R. 445-55.  Jakupczyk reported that she was referred to Dr. Bakhit "for the most part because [Dr. Hannah was] no longer comfortable writing opioid[] [prescriptions] for her."  R. 445.  Dr. Bakhit noted that Jakupczyk was currently on Lortab and Norflex, "which seems to be effective in controlling her pain," R. 445, continued her medication regimen, and ordered diagnostic testing.  R. 455.  Jakupczyk saw Dr. Bakhit monthly from March until June of 2009, and again in September, 2009.  Although Jakupczyk received nerve blocks, R. 461-63, she continued to complain of significant ongoing pain—although Dr. Bakhit always observed her to be in no acute distress and able to ambulate unassisted.  R. 459-60, 461-63, 464-65, 478-79.

Starting in February, 2010, Jakupczyk began receiving care at the New River Medical Group, where she was seen by Nurse Sunderland.  R. 559.  Her symptoms began improving shortly thereafter.  Her pain had improved 25% over her first two months of treatment and her activity level increased as well.  Nurse Sunderland noted that "Savella has really made a difference and [Jakupczyk] is doing much better with that," and that Jakupczyk was "doing incredibly well with the Sevella" and "can definitely tell a big difference with it."  R. 558.  After another month's progress, Nurse Sunderland noted that "Sevella seems to be doing a wonderful job helping [Jakupczyk] control her pain."  R. 557.  Nurse Sunderland continued to see Jakupczyk on a monthly basis until October, 2010.  Jakupczyk's medication continued to improve her pain and increase her activities levels, R. 545, 554, 556, as well as improve her sleep.  R. 543, 556.  In August, Jakupczyk reported that, "with her pain level being as low as it is, she thinks she can come down on [Lortab] a significant amount if not come off of it completely."

---

[8] Jakupczyk continued to see Dr. Hannah after November, 2008, but not with regularity.  See R. 334-35, 469, 474-75, 481, 537-38, 539-40.

R. 543. In October her pain had not improved since her last visit, but she stated she did not want to take any more narcotics (such as Lortab). R. 542.

Thus, the record indicates that Jakupczyk received conservative treatment from Dr. Hannah with mixed results, then received slightly more intrusive treatment from Dr. Bakhit, and ultimately was able to find dramatic improvement with her Sevella prescription from New River Medical Group while being followed by Nurse Sunderland. Moreover, each of these treatment providers consistently found Jakupczyk to be in no acute distress. R. 337-38, 339-40, 341-42, 344-45, 347-48, 349-350, 352-53, 356-57, 361-62, 363-64, 369-70, 457-58, 459-60, 461-63, 464-65, 478-79, 545, 554, 556, 557, 558, 559. As such, substantial evidence supports the ALJ's conclusion that Jakupczyk's symptoms have been receptive to relatively conservative treatment.

Finally, while the ALJ did reference Jakupczyk's activities of daily living, he did not impermissibly equate those activities with substantial gainful activities and likewise did not falsely equate the ability to perform such activities with the ability to perform substantial gainful activities. Instead, the ALJ merely noted that, "given the complaints of disabling symptoms and limitation," Jakupczyk's daily activities—including working part time as a waitress—were "not limited to the extent one would expect." R. 27. It is well established that the ALJ is entitled, indeed required, to look to the record as a whole in making his credibility determination, including the claimant's daily activities. See, e.g., Mickles v. Shalala, 29 F.3d 918, 927 (4th Cir. 1994) (holding that the evaluation of claimant's subjective pain complaints must include all available evidence, including evidence of the claimant's daily activities); Smith v. Astrue, 5:12CV98, 2013 WL 3783958, at *28 (N.D.W. Va. July 18, 2013) (quoting SSR 96-7p) ("In determining the credibility of the individual's statements, the adjudicator must consider the entire case record."); Aytch v. Astrue, 686 F. Supp. 2d 590, 605 (E.D.N.C. 2010) (citations

omitted) ("The ALJ's evaluation of a claimant's credibility must include the . . . effect of symptoms on [a] claimant's daily activities."). The ALJ did not err in doing so here.

For each of the foregoing reasons, I find that substantial evidence supports the ALJ's credibility determination.

**Shortness of Breath**

Finally, Jakupczyk argues that the ALJ unreasonably discounted her complaints of shortness of breath. She further notes the addictive nature of tobacco and asserts that the ALJ unfairly rejected her complaints of shortness of breath on the basis she continued to smoke, while simultaneously failing to provide her credit for her efforts to quit.

The ALJ, however, did not dismiss Jakupczyk's breathing complaints. The ALJ acknowledged Jakupczyk's chronic obstructive pulmonary disease (COPD) diagnosis. R. 25, 469, 537-38. Although the ALJ found Jakupczyk's complaints of breathing problems only "partially credible," R. 25, the ALJ expressly found asthma as a severe impairment. R. 20. Furthermore, the ALJ incorporated functional limitations corresponding to Jakupczyk's breathing into his RFC, finding that Jakupczyk should avoid moderate exposure to extreme temperatures, substantial humidity or wetness, and pulmonary irritants. R. 22. Jakupczyk puts forward no functional limitations for which the ALJ did not account.

Jakupczyk also overstates the ALJ's reliance on her tobacco usage. The ALJ found that Jakupczyk "smoked during most of the period in question [and] denied chest pain, shortness of breath, and coughing on numerous occasions." R. 25. The medical record makes clear that Jakupczyk's smoking was, in fact, an important part of her breathing problems. For example, Dr. Ajay Acharya noted in August, 2010, that chest pain that sent Jakupczyk to the ER was likely a "smoking related problem" and that "she definitely needs to quit smoking." R. 548-49. When

17

Jakupczyk saw Dr. Acharya again in October, 2010, she reported that she had quit smoking and had improved symptoms. R. 519. The ALJ was obligated to review and analyze such evidence. The ALJ also acknowledged the fact that Jakupczyk did eventually quit smoking, stating that the fact that she had continued to smoke until only recently suggested that her breathing problems were not as limited as she alleged. R. 25.

The bulk of the ALJ's analysis as to Jakupczyk's breathing problems, however, is related to her lack of complaints and the consistently benign results of diagnostic exams. R. 25. As the ALJ correctly notes, Jakupczyk had numerous normal chest x-rays, R. 296, 331, 388, 390, 391, 482, 511, 535, and a normal spinal CT exam. R. 389. A chest x-ray from August 21, 2010 confirmed COPD, but no acute chest disease. R. 480, 508. Furthermore, the ALJ noted that Jakupczyk only occasionally reported breathing symptoms. R. 25. The record confirms that Jakupczyk complained of shortness of breath only a few times, either when she was anxious, R. 349-50, or in association with rib pain. R. 283, 369-70. After starting treatment with New River Medical Group, Jakupczyk expressly denied shortness of breath to Nurse Sunderland on a number of occasions. R. 542, 543, 556.

Thus, the ALJ adequately accounted for all of Jakupczyk's breathing limitations established by the record and did not unreasonably discount her breathing complaints.

## **RECOMMENDED DISPOSITION**

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The clerk is directed to transmit the record in this case to the Honorable Samuel G. Wilson, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection.

Enter: January 27, 2014

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge